May it please the court, my name is Jeremiah Donovan, along with my friend Brian Leeming, I tried this case. Wait, just a moment and the courtroom may clear out a little so we can hear you a little better. I thought they came to see me. We're sure they did. I argued a case on the day that the Coppinter decision was argued and the place was full of beautiful suits and I was an assistant U.S. attorney and just arguing some minor case and I thought they came to see me. May it please the court. My name is Jeremiah Donovan and along with my friend Mr. Leeming, I tried this case below. The government down below claimed that Miller along with his friend Mack had killed Francis. We claimed that Miller along with his friend Taekwon Lushin had killed Francis. It's hard to figure out exactly what the jury found. The jury found that Mack was guilty of a conspiracy to murder, not guilty of the murders, and then guilty of another conspiracy to murder where there was no murder, it was discussions in a jail, as well as guilty of some firearms possessions. This appeal is so issue rich that I wish that there was some procedure by which I could make a motion to take some of the issues in this case and transfer them to some of the other cases in which I'm assigned in which the issues aren't quite so compelling. I guess what I'll do in the time. Issues are compelling, but what about the arguments? Well, that's what I'm trying to persuade you on. I guess what I'd like to do, I want to spend maybe my time on my flagship issue that is concerning the hearsay statements that Mack killed Francis, and then the glitch in the sentencing statute, which I find really interesting, and then if you guide me somewhere else, that's where I'll go. We just think that it's a violation of the federal rules of evidence to allow a jailhouse informant to say that Miller told him that Mack killed Francis, that he saw Mack walk up and kill Francis, and that the firearm, the murder weapon, belonged to Mack. Is part of your argument that the provision of this plea agreement helps secure the unavailability of the declarant? It is. It is. Because the rule says that if the party offering the hearsay statement, the statement that otherwise would be hearsay, has procured the absence of the witness, that they can't rely upon this exception. That usually is the case when the defendant has murdered, well, that's the case with respect to Francis. The trial court found that the government had established by a preponderance of the evidence that Mack had procured the absence of Francis, so all of Francis' statements come in. And here the plea agreement, and I must confess I haven't seen one precisely like this, but it provided that Miller would lose the benefit of the agreement if he testified inconsistent to the statements made in the plea colloquy, or if he testified to matters in addition to the facts proffered and agreed on. And I don't have any problem with this saying that he loses the benefit if he testifies inconsistently. I mean, that obviously would be a failure to accept responsibility, it would be another obstruction. He said in his plea, here's what happened, and if he comes in and says something else at trial, I have no problem with that. It's the in addition, it's the combination of the in addition plus having a very, very limited statement of facts. The statement of facts is just, I enticed the guy down and somebody came up and murdered him. But wasn't that statement limited because Mr. Miller wasn't willing to identify the other person? He didn't want to tell on Taekwon Lushin. Or whoever it was. He didn't, well, you know, they say, oh, we were only trying to prevent, we were only trying to prevent him committing perjury and coming in and saying Taekwon Lushin did it or somebody else did it. Yeah, sure. But, but, but, but, but, you know, as I say in my brief, and this is maybe a little bit of exaggeration, the second answer he gave when he testified would cause him to lose the benefit of his plea agreement. When the clerk said to him, state your name, and he would say his name, and that was within the scope. Where do you live? As soon as he gave that. That's information in addition to. So, so. Let's assume you're right and that this was, this statement by Farmer should not have been admitted. This is a conspiracy charge. He was acquitted of the actual crime, the substantive crime, right? And so why isn't the other evidence here in the case sufficient to, here for, to, to, for a jury to find beyond a reasonable doubt that he was participating in the conspiracy? Particularly I'm talking about Lushin's testimony on the day before and that when they sat around and they talked about killing Francis and Lushin volunteered and, and Mack said, no, you know, Jones is going to do it and, but he's got to go. All of that. Yeah. I mean, Taekwon Lushin, you know, Taekwon Lushin is, is, is first of all, Taekwon Lushin used that same firearm 10 times between the date of the killing and the date that it was found in a house where Mack was, was asleep. Yeah. Okay. So Taekwon Lushin's testimony absolutely needs to be, have some corroboration because he's just, he's, he's, he's not a, he's not a, he was not a believable witness. He's got all kinds of, he started off his testimony judge by saying, I'm a shooter. I get my bitches and my rep through shooting. He was not a believable witness. By letting in this testimony, you are, you are, you are corroborating Taekwon Lushin. This is strong corroboration for Taekwon Lushin. The acquittal on the substantive counts suggests that the jury was not particularly persuaded by Farmer's testimony. They acquitted as to the substantive counts. You know, I, I've led you to believe that because in my, in my brief, what I do is I adopt a government's theory that maybe what they found was Mack inspired to kill somebody. Mack inspired to kill him, but it wasn't that conspiracy that caused the death. He died in some other way. What I'd ask you to do is take a look at the indictment. This isn't like an ordinary federal indictment that you usually see. Usually you see in count one, he conspired to possess with intent to distribute cocaine. In count two, he, he possessed with intent to distribute cocaine. It's like the exact same thing, except one is an agreement to do the second thing. When you look at this, when you look at this in the first kind, it says he conspired to murder Francis. And the second count and third count, it doesn't say he, he murdered him. It says he laid in wait with malice of forethought and killed him. I think it could well be, I mean, I, I'm, we're just guessing what the jury did. Maybe they didn't find one of those that, that, that some part of the element of the second and third count, which was different from the conspiracy, was proven. We just don't know. Now at trial, you didn't, uh, there were, there were argument made about the against interest exception, but I don't think, and correct me if I'm misunderstanding, it wasn't raised below that there was a specific challenge to the, this provision of the plea agreement. Right. We did not, we did not make the argument that the government had caused his unavailability. You're right. Yeah. That was something I thought. So that would be a plain, we'd be applying a plain error standard. Um, I guess you would. Yeah. I guess you would. Let me talk real briefly about the, uh, about, about that glitch in the statute. The, the, uh, this just, this requires just statutory analysis. I have to worry about plain error here. Um, um, as essentially it says in the case, remember this is a conspiracy to murder. It's, and the statute, when we get to the fundamental part of it says in the case of a killing, you go to the murder statute. You get life in the case of a killing. It doesn't say in the case of a killing, or if it's a conspiracy, if the object of the conspiracy was to kill, we go to the statutes in the case of a killing. Well, with respect to the second conspiracy, there's no killing. There's no dispute about that. There was, this was all just jailhouse talk that resulted in the government's, uh, and the government's, uh, witness in the government's undercover guy coming and, and, and, and, and pretending to, to arrange for a killing, but, but then with respect to the first count, in order for the judge to find that there was a killing, the jury didn't find that. We can't find that in the jury verdict. He had to make his own finding. There's a glitch in the statute. And one of my favorite cases was decided in the year of my birth, 1948, United States versus Evans. In that case, the Supreme court said, look, this is a glitch. It was a very different statute. There's a glitch in this statute. There's no sentencing provision. If Congress does this, it's up to them to correct it. We're not going to step in and legislate. Good morning. May it please the court. My name is Brian Leeming. I'm here on behalf of the United States. This was a trial with a lot of complicated evidentiary issues. A trial, however, that was carefully managed by the district court and managing these many issues, the district court with one small exception, uh, made the proper evidentiary rulings that were squarely in its discretion in that the defendant's claims of errors are either without merit or otherwise harmless. Moreover, the defendant's life sentence for conspiring to murder two different people on two different occasions now is not only constitutional, but statutorily required. I'd like to speak to you, please, about the statement against penal interests. Um, the, the testimony of Miller through farmer. It's one thing I would think if the testimony was, um, Mac and I each pointed a gun and shot, but here one man's getting out to use the bathroom and the other one, and then he sees Mac coming towards him. So your argument, I understand is that they're both evidence, the participation in a conspiracy, and that's why it would be a statement against penal interest, but the roles or the actual actions, uh, discussed are so different, uh, qualitatively that how can the state, why was Max conduct needed? I'm not sure I understand what you mean by needed, but I think for purposes of whether it's a statement against his penal interest, how did Max conduct become part of Miller's statement against penal interest? Because the emissions by Miller are, are admitting to a conspiracy with Mac in which the plan of the conspiracy is to murder Ian Francis. And the more that Mr. Miller associates himself with that conspiracy by defining what role he played in it and what the role that Mac played in it, uh, gave it that, uh, of reliability and corroboration, uh, through the trial evidence and testimony to put in context, it's clear. There was never any doubt that Mr. Miller wasn't the shooter. We even Mr. Francis who had told his cousin, Mr. Brinson of how he came to be at that point was he was driving in the car with Mr. Miller and that Mr. Miller had gotten out of the car. Uh, and as he passed through the, onto the other side of the street and passed the shooter, Mr. Francis came to the belief that Mr. Miller had set him up and to give it to that even higher indicia of, of corroboration is that that's what Mr. Miller admitted to in his plea colloquy when he pled guilty. And it's also corroborated in different other ways through the testimony of Mr. Lucien and obviously the recovery of the firearm, which, uh, put the firearm in Mr. Mac's possession six months after the murder. Mr. Miller didn't in his plea allocution test say anything about who the shooter was. Uh, and I have to admit, I am troubled by the plea arrangement, uh, with Miller, uh, because it seems to, and I understand your statement that you were concerned about Miller offering false testimony, but you seem to have ensured that he would or attempted to ensure that he wouldn't offer false testimony by assuring that he couldn't testify at all. And I'm not sure that that's a proper plea provision. I think it would be helpful if I gave the court some context as to sort of how that plea came about. As the court probably gleaned from the record, that guilty plea was entered after jury selection. It was also a part of an ongoing negotiation with Mr. Miller's lawyers to which I directly participated in the issue. Uh, there were two factual, um, positions that Mr. Miller's counsel and Mr. Miller were taking one that he was not going to testify. And his claim was if he was called to testify, he would take the fifth amendment because as part of the plea negotiation, the government was attempting to convince Mr. Miller through his lawyers that he cooperate with the government because the government wanted Mr. Miller to testify because if Mr. Miller testified truthfully, the government was extremely confident that the person that was lying in wait for Mr. Francis was Mr. Mack. The second part was Mr. Miller's attorney says he will not identify his friend as part of the plea colloquy. He won't identify the person that caused me some concern. I already have a situation where Mr. Mack and Mr. Miller had already conspired in, in the government's view, killed Mr. Francis. Are they up to something else? A lot has been made about the in addition to language. I put that language in there because if I just said inconsistent, he can make the argument is that by identifying him at trial or identifying falsely, somebody else that may not be inconsistent because he didn't identify the person at the plea colloquy. So the language in addition to was inserted to ensure that he did not provide false exculpatory evidence. And it was clear all along that that was the intent of the parties. That was the subject matter of the discussions that culminated in that late evening or early evening guilty plea on December 2nd was because the government was concerned that Mr. Miller could take advantage of a favorable plea agreement by coming in here and attempting to exonerate his friend. Remember the context of all of these individuals involved, Mr. Francis, Mr. Farmer or Mr. Miller and Mr. Mack were all friends at the time. And that the context of, I mean, I would, you would not have thought, and I would think you would think you shouldn't make a provision of the plea agreement that Mr. Miller or any witness agrees not to talk to the defense. Correct. He was freely available to talk to anybody he wanted. This was close to saying you can't testify for the defense. I don't think testify to anything. That's not in the plea colloquy. I don't think that's what it says, your honor. I think when you look at the context of how the plea agreement came to be, it was certainly not in the government's contemplation that he would not testify. I was being told he was not going to testify, but I also recognize that he could change his mind down the road. And at the time of the guilty plea for Mr. Miller, I can't remember. We were scheduled for trial that day. At that time for Mr. Mack in a couple of months, it wasn't, I can't remember the exact date until other events transpired that caused the launching of the second conspiracy. It was never the government's intention to prevent Mr. Miller from testifying. It was. May not have been your intent at the time, but that isn't the practical effect of the language that was in the, uh, in the agreement such that, uh, he couldn't, he couldn't testify. He could testify, but he has to testify consistent with what he told you. Not, not for the defense, not adding anything, not in any contradictory way. He could testify. He was just going to lose the benefit of the bargain that he got, which in this case, so that's, uh, that's, isn't that a compulsion not to, uh, in effect, a compulsory matter that makes him at least unavailable. It doesn't have, he's not technically totally unavailable, but his incentives are not to testify under those circumstances. I don't believe so. I think he's sort of, first of all, he has his fifth amendment, right? Because he's awaiting sentencing and two, he may be losing the benefit of the bargain, but at that point he had, the government had reduced the charge to a second degree murder. So he was no longer in contrast to Mr. Mack, focusing on facing a mandatory life. He could still testify if he testified inconsistent or different than what he, who, as far as the plea colloquy was, then he could go in the court. He wouldn't get the benefit of the government saying, your honor, we're agreeing to this binding agreement, but he can still testify truthfully and argue to the court. Yeah. What I told the government was truthful. And what I told this court in this trial was truthful. But are you, are you actually suggesting that if he had gone to and testified at Mac's trial in a manner that you believed was false by providing exculpatory testimony, that you were bound by your plea agreement and you wouldn't at that time, your jury's testimony could not have at least raised to the district court that there had been some violative conduct of the plea agreement at the trial? I mean, yes, you would have had the possibility that Mr. Mack could have been acquitted and that may have been problematic for you, but, but did you really have to limit what Mr. Miller could say? No, if Mr. If Mr. Miller had come and testified at the Mac trial and testified that it was somebody else that was lying in wait, the government would have taken the position that he breached the plea agreement and the government would no longer be bound under the terms of the agreement to argue for that binding range that the parties had submitted as part of the plea agreement. I think here's, here's my difficulty. I mean, the plea agreements all the time say you're not going to commit any more crimes. Uh, uh, so if that's what this one had said and he testified at the trial and you believed you could prove that his conduct was perjurious, I think you could say, uh, the plea agreement was off unless I'm misunderstanding something. But, but this agreement went further than just saying, don't commit any other crimes while awaiting sentencing. Um, it said that he could not offer testimony in addition to what he had already stated. Um, so you wouldn't have to show, um, to, to rip up this plea agreement. You wouldn't have to show perjury at the trial. You just have to show that he added to what was in the plea colloquy. And that was negotiated based upon, again, the context of those discussions were even at that, that December 2nd plea colloquy is his attorneys are adamant. He's not going to testify, but the government was concerned that if he were to change his mind again, because the government had entered into a binding plea agreement, if it had been accepted to the court by the court, then all the parties would have been bound to the range. If he had testified at trial that the person lying in wait was Mr. Mack, would that, that would have been violative of the plea agreement, wouldn't it? No, no. It would have been in addition to, it would have been in addition to, I mean, you may have liked the testimony, but, but my concern is you're you were limiting him from speaking falsely or truthfully only because, well, I, we obviously weren't, if he was to come forward and say, I'm going to testify a trial that it was me and Mr. Mack, my guess is he would, his lawyers would have come to me and said, can we work out some sort of cooperation agreement? I didn't think he was going to sort of come in voluntarily with no benefit to him. Um, but I was extremely confident that Mr. Mack was the shooter. And my only concern at that time was not to intimidate Mr. Miller from testifying and not to procure his unavailability or to make him unavailable to anybody. My only concern was at that point was to prevent the false exculpatory. That was a possibility. I didn't think that he was going to do it because his lawyers told me he wasn't going to do it. But I just wanted to be assured that that's in fact was not going to happen somewhere down the road. What is, what is the evidence you point to, uh, outside of farmer's testimony that, uh, would could possibly convince us that the error was, um, was, was harmless? Well, the most obvious thing was the jury did acquit him of the substantive murder charges. So if they had believed Mr. Farmer, Mr. Farmer testified that Mr. Farmer, he saw Mack shoot Mr. Francis, uh, by acquitting and the jury had come back and asked a couple of questions on aiding and abetting. So the first piece of evidence was Mr. Lucien testified as to being in Mr. Jernigan's apartment on the street where the murder happened, uh, either the night of or the night before, during which Mr. Mack said he was going to kill Mr. Francis. And he said that he was going to have his cousin, Mr. Laquan Jones do it. And then he directed Mr. Jernigan to remove the gun or to take the bag out of the closet where the gun was and then remove from the bag. You have the recovery of the murder weapon in the, in the apartment where Mr. Um, Mack was, was hiding out. We have a certainly testimony that multiple people use that gun, but the witness Leslie Richardson saw Mr. Mack with that gun prior to his seizure. We also have Mr. Mack's post, uh, what I call post Miller guilty plea conduct there. You have Mr. Mack conspiring with Mr. Lucien to get rid of Mr. Jernigan. And there were recorded prison calls where, uh, Mr. Lucien is discussing with people how, uh, that they believe that Jernigan is going to now testify at trial. Mr. Jernigan had been a witness in the grand jury where he made inculpatory statements about all of those people being in the apartment on the night of the murder. So your, your point there would be that that's a modus operandi kind of thing. Uh, and it corroborates, uh, uh, uh, Luke one. Correct. And it's a pretty revealing consciousness of guilt by Mr. Mack to think that he's got to get rid of Mr. Jernigan. And it was Mr. Jernigan that puts Mr. Mack and Mr. Miller and Mr. Jones in the apartment on the night of the murder. We also have Mr. Lucien's, uh, recorded conversations with his cellmate where he makes where he doesn't know he's being covertly, um, uh, recorded makes very pointed comments that Mr. Mack wants CJ gone. That's Mr. Jernigan. And there'd be no reason for him to make that up at that point. He was working in concert with Mr. Mack to get rid of Mr. Jernigan. And in fact, uh, Mr. Lucien, as vigorously as he was cross-examined, the jury peers believed him and that, uh, because the evidence of the, of the second conspiracy was wholly based upon Mr. Lucien's testimony and those recorded prison calls and the recorded, uh, calls or conversations with his cellmate. So to a long answer to your honor's question is that there was ample evidence, uh, that, uh, the, the government proved beyond a reasonable doubt without Mr. Farmer's testimony, the conspiracy. First of all, Mr. Farmer's testimony related only to the Francis murder had nothing to do with the second conspiracy. And so even if there was, if the court was concerned about the admission, uh, or if the government was believed to be a procurity unavailability of, of Mr. Farmer, not, not affected at all. And the, um, the plea agreement with Mr. Miller, was that, is that in the record below? Was that available to, um, to Mr. Mack? Yes, it was publicly filed. I see that my time is up. Thank you. Your Honor. Do I have any, do I have any time left? I have two minutes. Don't forget two minutes rebuttal. Don't don't. If this, if this, if this plea agreement had been thrown out by the government, it wasn't just that he was losing the benefit of a government recommendation that he only gets 16 years. Now the trial judge, the trial judge was bound. This was one of those binding agreements. So the trial judge was bound to give him 16 years unless the trial judge on his own decided, I just can't do that. But if that agreement had been thrown out, then, uh, then, then he could have gotten anything. And you could see by the sentencing proceedings that took place in Miller's case, that trial judge was, was having a hard time with giving him that sentence, but he did, but he did. Um, can I, can I just say this? This is a really important case because since we've prosecuted the whole federal criminal justice system has changed with the advent of the sentencing guidelines, the, the reliance upon cooperating witnesses, just, you know, like this, this, this, these vile people journey, uh, not for a Taekwondo Lucian and, and, and, and farmer, um, has become so pronounced. Um, and you can hear the prosecutor and say, well, what's the evidence? Well, you got, you got, you got, you got, uh, you got, uh, Taekwondo Lucian saying this and Taekwondo Lucian talking to his cellmate and it was all recorded Taekwondo Lucian talking to his cellmate and Taekwondo Lucian says this and Taekwondo Lucian says that. And it seems to me that this case is a, it is a really interesting case in the sense that there is some limit on which we allow these people to come in and say, other people told me this or I told my cellmate this. Um, it's not just that it, that it violates the, the, uh, uh, the, uh, the rule and it's not just that it violates the right to confront a witness against you. It has to do with the truth finding function of our court. Thank you both. We'll take the matter under advisement.